**The PEOPLE of the State of Colorado, Plaintiff–Appellant,**

v.

**Ann Marie O'HEARN, Defendant–Appellee.**

**No. 96SA218.**

Supreme Court of Colorado, En Banc.

Jan. 13, 1997.

trict Attorney, Colorado Springs, for Plaintiff–Appellant.

The Tegtmeier Law Firm, P.C., Richard Tegtmeier, Bradley S. Taylor, Colorado Springs, for Defendant–Appellee.

Justice HOBBS delivered the Opinion of the Court.

This interlocutory appeal is brought by the District Attorney for the Fourth Judicial District, pursuant to C.A.R. 4.1,[1] from an order of the El Paso County District Court granting defendant's motion to suppress drugs and drug-related evidence seized at a Colorado Springs residence. The district court also suppressed statements made in the absence of an advisement pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Upon review of the district court's findings and the evidentiary record, we uphold the court's suppression order.

## I.

On February 28, 1996, Colorado Springs police officers Gregory, Fischlein, and Bertsch received a "tip package" from their sergeant containing an anonymous tip that had been called into "crime stoppers" and relayed to the police department. The essence of the "tip" was that there had been a high level of foot traffic to and from a residence on North Chestnut Street where Ann Marie O'Hearn (O'Hearn) resided. The tipster also expressed a belief that the foot traffic was related to narcotics activity. Officer Gregory testified that, in responding to such a tip packet assigned by a superior officer, the assigned officers are expected to conduct an investigation. Although the nature of this particular investigation was not specified by the assigning officer, the investigating officers decided to engage in what they described as a routine Colorado Springs police practice called a "knock and talk." This involves the police engaging citizens in conversation at their homes, in the pursuit of investigating suspected criminal activity.

Through checking records, the officers verified that O'Hearn was listed as the resident of the house and that she had no criminal record. They also learned that a warrant for O'Hearn's arrest might exist for ownership of an unlicensed dog, in violation of a municipal ordinance. They did not attempt to confirm the existence and current validity of the arrest warrant prior to their arrival at O'Hearn's home.

At approximately 11:45 p.m. on February 28, 1996, the three armed and uniformed officers arrived at O'Hearn's residence on North Chestnut Street. At the time the officers were knocking at the front door, O'Hearn was arriving at the back kitchen door with a friend, Richard Ballo. O'Hearn turned on a dim light under the stove hood and walked to the front of the house because she heard knocking at the front door. With the exception of the kitchen hood light, which was dimly shining into the living room, no other light was on in the house or on the front porch. After O'Hearn asked who was there and Officer Fischlein announced, "Police," O'Hearn opened the door. Two of the officers then walked into O'Hearn's living room, followed by the third officer. One of the officers stated that they were investigating "neighborhood activity." Standing in O'Hearn's living room, one of the officers engaged O'Hearn in conversation while the other two began to look around the living room.

Officer Gregory noticed a wooden box on the coffee table, which he testified is known, based on his experience, as a device that conceals a marihuana pipe. Upon examining the device, he said to O'Hearn "we can search your house now," then asked whether she used narcotics and had any on the premises. She answered that she occasionally used marihuana and had a little in the house. She started to reach into her purse and was told to desist since, as the officer testified, she could have been reaching for a weapon. Officer Gregory asked O'Hearn four times whether the officers could search the premis-

**1.** C.A.R. 4.1(a) provides in relevant part that "[t]he state may file an interlocutory appeal in the supreme court from a ruling of a district court granting a motion … made in advance of trial by the defendant … to suppress evidence or granting a motion to suppress an … admission."

es. She said no. O'Hearn testified she was told she was not free to leave.

While Officer Gregory stood in the living room and questioned O'Hearn, Officer Fischlein completed a field interview card in O'Hearn's kitchen. He confirmed through radio dispatch that outstanding arrest warrants existed against O'Hearn for failure to obtain a dog license. No attempt was made to arrest O'Hearn for this offense. The nonconsensual entry was made and the marihuana pipe was discovered prior to confirmation of the misdemeanor arrest warrant. No *Miranda* advisory was given to O'Hearn before or during the questioning. Having failed to obtain O'Hearn's consent to search, Officer Gregory left the premises to obtain a search warrant on the basis of the discovery of the marihuana pipe and O'Hearn's answers to the questions. The two other officers remained with O'Hearn in the living room. Officer Gregory returned at approximately 2:00 a.m. February 29, 1996, with a search warrant and two additional police officers to aid in the search. A total of thirty-three drug and drug-related items were found at O'Hearn's residence. She was placed under arrest, taken to the Colorado Springs police station, then given a *Miranda* advisory, and charged with possession of marihuana with intent to sell and various other drug-related offenses.[2]

The suppression motion was heard on May 31, 1996. After receiving the testimony of O'Hearn, Ballo, and two of the police officers, the district court ruled that the prosecution had failed to prove that entry into the home was consensual, and entered an order sup-pressing O'Hearn's statements and all the evidence seized. The district court determined that this midnight investigation was conducted without a warrant for the sole purpose of obtaining evidence of narcotics activity and that O'Hearn's statements were obtained in violation of *Miranda*.

The district attorney raises three questions for review: (1) whether the district court erred in ruling the police were not properly on the premises; (2) whether *Miranda* applied under the circumstances; and (3) whether O'Hearn's statements were voluntary.

## II.

The prosecution argues that entry into O'Hearn's home was valid because O'Hearn gave consent and because arrest warrants for a dog license violation were outstanding.[3]

We determine that the district court's findings of fact are supported by the evidence and we affirm the suppression order. Entry into the home occurred in the course of a drug investigation without a warrant, without consent of the occupant, and without probable cause or exigent circumstances justifying a warrantless entry or search, in violation of the United States and Colorado Constitutions.

## A.

The Fourth Amendment and its Colorado counterpart protect citizens against invasion of their privacy in a variety of settings.[4] The clearest right is to be free from

---

2. O'Hearn was charged by information dated March 11, 1996, with possession of controlled substances Schedule I (Psilocyn and Psilocybin), a class three felony in violation of §§ 18–18–203 and –405(2)(a)(I), 8B C.R.S. (1996 Supp.); possession of a controlled substance Schedule II (Methamphetamine), a class four felony in violation of §§ 18–18–204 and –405(2)(a)(I), 8B C.R.S. (1996 Supp.); possession of marihuana with intent to dispense, sell and distribute, a class four felony in violation of § 18–18–406(8), 8B C.R.S. (1996 Supp.); possession of eight ounces or more of marihuana, a class five felony in violation of § 18–18–406(4), 8B C.R.S. (1996 Supp.); and possession of drug paraphernalia, a class two petty offense in violation of § 18–18–428, 8B C.R.S. (1996 Supp.).

3. The prosecution's alternative argument on appeal that seizure of the marihuana pipe was appropriate as the result of a search incident to arrest will not be addressed because there is no factual support to validate such an analysis.

4. The Fourth Amendment to the United States Constitution provides:
   The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
   Similarly, article II, § 7 of the Colorado Constitution provides:

unreasonable governmental intrusion into one's home. *Payton v. New York,* 445 U.S. 573, 589–90, 100 S.Ct. 1371, 1381–82, 63 L.Ed.2d 639 (1980). "It is a 'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable." *Id.* at 586, 100 S.Ct. at 1380. "[T]he Fourth Amendment to the United States Constitution ... prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest." *Id.* at 576, 100 S.Ct. at 1374–75. Unreasonable "physical entry of the home" is the "chief evil" against which the Fourth Amendment is directed. *Id.* at 585, 100 S.Ct. at 1379–80. Intrusion into a home at night exacerbates this wrong. *Wanger v. Bonner,* 621 F.2d 675, 682 (5th Cir.1980).

The principal protection for citizens against governmental intrusion into the home is the requirement of a warrant based on probable cause for search or arrest. *See Welsh v. Wisconsin,* 466 U.S. 740, 748, 104 S.Ct. 2091, 2096–97, 80 L.Ed.2d 732 (1984). The warrant requirement interposes an impartial member of the judiciary between the law enforcement officer and the person against whom the arrest and/or search is directed. *People v. Moreno,* 176 Colo. 488, 492, 491 P.2d 575, 577–78 (1971).

■ In the absence of probable cause and exigent circumstances, warrantless entry into a home is proscribed. *Welsh,* 466 U.S. at 749, 104 S.Ct. at 2097; *see Coolidge v. New Hampshire,* 403 U.S. 443, 474–75, 91 S.Ct. 2022, 2042–43, 29 L.Ed.2d 564 (1971) (unless police can show that entry was pursuant to a carefully defined exception to the warrant requirement, based upon exigent circum-

stances, warrantless entry into home "is *per se* unreasonable"). A warrantless, nonconsensual entry into a home leads to suppression of evidence resulting from the illegal entry. *New York v. Harris,* 495 U.S. 14, 20, 110 S.Ct. 1640, 1644, 109 L.Ed.2d 13 (1990); *accord People v. Taube,* 864 P.2d 123, 131 (Colo.1993) (applying "fruit of the poisonous tree" suppression doctrine as the result of Fourth Amendment violations).

■ The Fourth Amendment right of the people to be free from unreasonable searches and seizures is not violated when the holder of the right provides the searching officer with voluntary consent to enter the premises. *People v. McKinstrey,* 852 P.2d 467, 470 (Colo.1993). Evidence obtained as the result of consensual entry and search does not require suppression. *See People v. Breidenbach,* 875 P.2d 879, 888 (Colo.1994).[5]

### B.

■ The prosecution did not meet its burden of proof to demonstrate by clear and convincing evidence that O'Hearn's consent to enter the premises was freely given. *See People v. Thomas,* 853 P.2d 1147, 1149 (Colo. 1993) (refusing to overturn trial court factual findings regarding consent that are supported by evidence); *People v. Drake,* 785 P.2d 1257, 1265–66 (Colo.1990) (reciting clear and convincing evidence standard). O'Hearn and Ballo both testified that, when O'Hearn opened the door, the officers walked right in without obtaining permission to enter.

■ One officer testified that O'Hearn said, "Come in." The district court discounted this testimony because the officer's recol-

---

The people shall be secure in their persons, papers, homes and effects, from unreasonable searches and seizures; and no warrant to search any place or seize any person or things shall issue without describing the place to be searched, or the person or thing to be seized, as near as may be, nor without probable cause, supported by oath or affirmation reduced to writing.

5. If a police officer is legally within the home, evidence that is in plain view at the location where the police officer is authorized to be may be seized without a search warrant. *Coolidge v. New Hampshire,* 403 U.S. 443, 465, 91 S.Ct.

2022, 2037–38, 29 L.Ed.2d 564 (1971). The plain view doctrine applies when: (1) the intrusion resulting in seizure of evidence in plain view is valid; (2) the discovery of the evidence is inadvertent; and (3) the police officers reasonably believe that the evidence seized is incriminating. *People v. Taube,* 864 P.2d 123, 131 (Colo. 1993). *But see Horton v. California,* 496 U.S. 128, 133–42, 110 S.Ct. 2301, 2305–11, 110 L.Ed.2d 112 (1990) (inadvertent discovery not an absolute requirement). Plain view evidence may serve as probable cause for obtaining a search warrant. *See People v. Baker,* 813 P.2d 331, 333–34 (Colo.1991).

lections of other circumstances that night proved to be faulty or inaccurate in light of the testimony of other witnesses. Whether an individual's consent to entry was voluntary is a matter to be determined under the totality of the circumstances. *People v. Milton*, 826 P.2d 1282, 1286 (Colo.1992).

At the suppression hearing the prosecution sought to rely on *People v. Baker*, 813 P.2d 331 (Colo.1991).[6] There, police officers effected a valid nonconsensual entry of the defendant's home based on probable cause and exigent circumstances. After knocking on the defendant's door, they were greeted by the defendant and the pungent smell of burning marihuana from inside the home. The defendant cried out, "Hey Babe, it's the cops," and tried to shut the door. Then, with probable cause to believe an offense was being committed, the police entered the home, under those exigent circumstances, to make a warrantless search. *See also Johnson v. United States*, 333 U.S. 10, 13, 68 S.Ct. 367, 368–69, 92 L.Ed. 436 (1948) (odor of burning narcotics may establish probable cause). In the course of making an investigative inquiry at a person's residence, a police officer is not entitled to walk past the person who opens the door, without obtaining permission to enter. *See United States v. Curran*, 498 F.2d 30, 33–34 (9th Cir.1974); 1 Wayne R. LaFave, *Search and Seizure*, § 2.3(b) (3d ed. 1996).

In view of the district court's findings of fact and the evidentiary record here, we conclude that the district court was correct in suppressing all evidence and statements gathered as a result of this nonconsensual and invalid entry.

The prosecution seeks, in the alternative, to rely on the existence of outstanding municipal warrants for dog license violations. Officer Fischlein testified that, "we sort of suspected that there was a warrant for her prior to knocking on the door." Officer Gregory testified that, "we had not confirmed that there was, in fact, a warrant that needed to be served."[7] The district court found that the nonconsensual entry into O'Hearn's home occurred solely for the purpose of a narcotics investigation based on the anonymous tip and was in no way justified by a dog warrant. Findings that are amply supported by evidence in the record are not to be upset by this court. *People v. Thomas*, 853 P.2d 1147, 1149 (Colo.1993); *see People v. Horn*, 790 P.2d 816, 818–19 (Colo.1990).

The prosecution also cites *People v. Rivers*, 727 P.2d 394 (Colo.App.1986), and *People v. Harris*, 797 P.2d 816 (Colo.App.1990), to support a warrantless nonconsensual entry into O'Hearn's home. In *Rivers*, unlike here, consent to enter the home of the defendant was given by a third party who had authority to allow entry. *See United States v. Matlock*, 415 U.S. 164, 170, 94 S.Ct. 988, 992–93, 39 L.Ed.2d 242 (1974). In *Harris*, the defendant did not have a reasonable expectation of privacy because he was not in his own home at the time of the arrest, nor was he an overnight houseguest in the apartment where

---

**6.** At the suppression hearing, the prosecution argued:

> It's our position that [the police officers] asked to go in [to O'Hearn's residence]. The tenor of the whole situation is that they were asked in, indicated that they were asked to go in.
> ... [B]y permitting them in, she seem [sic] to be implying her permission for them to go in.
> ... [O]nce they see the plain view of the marijuana smoking device, pipe, at that point the officers go get a warrant.
> ... This pipe has been testified by officers and one of the defense witnesses to be a common device for marijuana....
> That gives them probable cause.... [W]hatever they found is either in that warrant or comes up under the plain view doctrine.

**7.** Police officers may enter a suspect's home to arrest the suspect when they have a warrant and when they have reason to believe that the suspect is within. *Payton*, 445 U.S. at 602–03, 100 S.Ct. at 1388–89. An arrest permitted by *Payton* is not confined to a felony arrest. *United States v. Spencer*, 684 F.2d 220, 223 (2d Cir.1982) (allowing police to enter and search a defendant's home in order to execute bench warrant issued after defendant failed to appear in court in connection with misdemeanor charges), *cert. denied*, 459 U.S. 1109, 103 S.Ct. 738, 74 L.Ed.2d 960 (1983). In the case before us, the officers did not confirm the existence of the warrant before going to O'Hearn's home; they told O'Hearn that they were there to investigate a report related to narcotics, not to arrest her on a dog warrant; and they went to the home at 11:45 p.m. at night. Hence, this case does not qualify to be considered under the *Spencer* analysis.

he was apprehended.[8] Moreover, the defendant was sitting before "a wide open door that completely exposed him to public view from the building's common area," *Harris,* 797 P.2d at 817, when he was spotted by the police and arrested for assault.

A warrantless search or seizure must be *reasonable* under the circumstances of the case. *See, e.g., Vernonia Sch. Dist. v. Acton,* —— U.S. ——, ——, 115 S.Ct. 2386, 2390, 132 L.Ed.2d 564 (1995). When police seek a warrantless entry into a home, the state must prove the existence of probable cause to believe that a crime has been committed and exigent circumstances exist that justify acting in the absence of a warrant. *People v. Miller,* 773 P.2d 1053, 1057 (Colo. 1989). The pertinent factors to be considered are whether:

> (1) a grave offense is involved, particularly a crime of violence; (2) the suspect is reasonably believed to be armed; (3) there exists a clear showing of probable cause to believe that the suspect committed the crime; (4) there is a strong reason to believe that the suspect is in the premises being entered; (5) the likelihood exists that the suspect will escape if not swiftly apprehended; and (6) the entry is made peaceably. One additional factor is whether the warrantless entry is made at night.

*Id.* (citations omitted). None of these factors were found by the district court to exist here.

Nor does the plain view doctrine apply. The marihuana pipe was not seen by police officers until they were standing in O'Hearn's living room. *See People v. Coto,* 199 Colo. 508, 510, 611 P.2d 969, 971 (1980) ("Accordingly, since the officers were not legitimately on the premises, the contraband discovered ... in plain view must be suppressed. In addition, evidence seized pursu-

ant to the resulting search warrant ... issued on the basis of the illegal entry, must be suppressed.").

The nonconsensual, warrantless entry into O'Hearn's residence violated the Fourth Amendment to the United States Constitution and article 2, section 7 of the Colorado Constitution. The district court's suppression of evidence obtained from the illegal entry was correct. *See Wong Sun v. United States,* 371 U.S. 471, 484–87, 83 S.Ct. 407, 415–17, 9 L.Ed.2d 441 (1963) ("fruit of the poisonous tree" doctrine).

### III.

The prosecution asserts on appeal that the district court erred in holding that *Miranda* warnings were required when Officer Gregory questioned O'Hearn regarding the marihuana pipe, and that O'Hearn's statements were voluntary.

*Miranda* warnings are required when an individual is subjected to custodial interrogation. *Accord People v. Breidenbach,* 875 P.2d 879, 885 (Colo.1994).[9] The district court found that O'Hearn was detained in her living room by three officers and that she was not free to leave. She was asked if she used illegal narcotics and if she had any on the premises. O'Hearn answered yes to both questions. These questions were "reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis,* 446 U.S. 291, 301, 100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297 (1980). No *Miranda* advisory was delivered.

The test for determining whether an individual is in custody "is an objective one: whether a reasonable person in the suspect's position would consider himself deprived of

---

**8.** Under *Minnesota v. Olson,* 495 U.S. 91, 96–97, 110 S.Ct. 1684, 1687–88, 109 L.Ed.2d 85 (1990), the Supreme Court recognized that overnight guests have a legitimate expectation of privacy in the homes of their hosts.

**9.** *Miranda* requires police officers to advise criminal suspects of their rights prior to questioning, once they are in custody or have been deprived of their freedom in any significant way. A suspect must be advised that he "has a right to remain silent, that any statement he does make

may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." 384 U.S. at 444, 86 S.Ct. at 1612; *accord People v. Hopkins,* 774 P.2d 849, 851 (Colo.1989). Statements made in violation of *Miranda* are not admissible in a criminal case because the warnings requirement is considered "fundamental with respect to the Fifth Amendment privilege and not simply a preliminary ritual to existing methods of interrogation." 384 U.S. at 476, 86 S.Ct. at 1629.

his freedom of action in any significant way." *People v. Thomas,* 839 P.2d 1174, 1178 (Colo. 1992); *People v. Trujillo,* 784 P.2d 788, 791 (Colo.1990).

■ The issue of custody is to be determined by the trial court after weighing the testimony and assessing the credibility of the witnesses. *People v. Dracon,* 884 P.2d 712, 717 (Colo.1994). If the findings of the trial court are supported by competent evidence and the trial court applied the correct standard, the findings are not reversible on appeal. *People v. LaFrankie,* 858 P.2d 702, 706 (Colo.1993), *cert. denied,* 511 U.S. 1077, 114 S.Ct. 1663, 128 L.Ed.2d 379 (1994); *People v. Haurey,* 859 P.2d 889, 893 (Colo.1993). In order to determine whether a reasonable person would hold the belief that her freedom has been significantly constrained, the following factors are applicable in evaluating the totality of circumstances:

> The time, the place and purpose of the encounter; the persons present during the interrogation; the words spoken by the officer to the defendant; the officer's tone of voice and general demeanor; the length and mood of the interrogation; whether any limitation of movement or other form of restraint was placed on the defendant during the interrogation; the officer's response to any questions asked by the defendant; whether directions were given to the defendant during the interrogation; and the defendant's verbal or nonverbal response to such directions.

*Dracon,* 884 P.2d at 717.

■ The district court's conclusion, under the totality of circumstances, that O'Hearn was subjected to custodial interrogation in violation of *Miranda* is supported by evidence in the record and will not be disturbed on appeal.

The prosecution invokes *Stansbury v. California,* 511 U.S. 318, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994), to argue that *Miranda* advisory need not have been given under the circumstances here. *Stansbury* stands for

the proposition that the subjective view of the police officer regarding the interrogation is irrelevant to the analysis. Contrary to the prosecution's argument, the court in *Stansbury* noted: "a court must examine all of the circumstances surrounding the interrogation." *Stansbury,* 511 U.S. at 322, 114 S.Ct. at 1529.

The prosecution also cites *United States v. Knox,* 839 F.2d 285 (6th Cir.1988), *cert. denied,* 490 U.S. 1019, 109 S.Ct. 1742, 104 L.Ed.2d 179 (1989). *Knox* involved police interrogation occurring at a private office in the airport, where it was thought that the suspects were engaged in drug smuggling. The persons there were escorted voluntarily to separate rooms in the airport. They were told they were not under arrest and were not advised that they could not leave. The *Knox* court stated: "The test is an objective one: would a reasonable person in the defendant's position have felt that he was under arrest or was 'otherwise deprived of his freedom of action in any significant way.'" 839 F.2d at 291 (citing to *Miranda,* 384 U.S. at 477, 86 S.Ct. at 1629). O'Hearn rightfully believed that she was not free to leave. She was attended by three armed and uniformed police officers; she was told she was not free to leave.

■ Aside from *Miranda,* O'Hearn's statements must also be suppressed because a warrantless entry into a home "lead[s] to the suppression of any evidence found, or statements taken, inside the home." *New York v. Harris,* 495 U.S. 14, 20, 110 S.Ct. 1640, 1644, 109 L.Ed.2d 13 (1990); *see People v. Taube,* 864 P.2d 123, 129 (Colo.1993) ("Application of the exclusionary rule and the 'fruit of the poisonous tree' doctrine requires us to affirm the court of appeals' decision to suppress the evidence unless the original search falls within an exception to the warrant requirement."). Since O'Hearn's statements were made in violation of *Miranda* and were the fruit of an illegal entry, we need not determine whether the statements were voluntary.[10]

10. The legal analysis for voluntariness of an inculpatory statement is applicable to statements made after a *Miranda* advisory is given and

"some form of coercive police activity does not play a significant role in inducing the state-

## IV.

Accordingly, the district court's suppression order is affirmed in all respects.

ment." *People v. Hamilton,* 831 P.2d 1326, 1331–32 (Colo.1992).