**The PEOPLE of the State of Colorado, Plaintiff–Appellant,**

**v.**

**James HOLMES, Defendant–Appellee.**

**No. 99SA98.**

Supreme Court of Colorado, En Banc.

June 1, 1999.

A. William Ritter, Jr., District Attorney, Second Judicial District, Robert J. Whitley, Deputy District Attorney, Denver, Colorado, Attorneys for Plaintiff–Appellant.

Biondino & Ruterbories, P.C., C. Robert Biondino, Jr., James R. Ruterbories, Denver, Colorado, Attorneys for Defendant–Appellee.

Justice BENDER delivered the Opinion of the Court.

In this interlocutory appeal, the prosecution challenges an order of the trial court suppressing tangible evidence seized from the defendant upon his arrest following a warrantless entry into his apartment. A police officer responding to a noise complaint knocked hard on the defendant's apartment door, inadvertently causing it to open. Standing outside the apartment and looking through the open door, the officer observed a bong[1] and smelled the odor of burning marihuana. The trial court ruled that by knocking on the door hard enough to cause it to open, the officer had engaged in an unconstitutional warrantless search. Because we conclude that the officer's knocking on the door and observation of the interior of the apartment was not a search for Fourth Amendment purposes, we reverse the suppression ruling and remand for further proceedings.

## I. FACTS AND RULING BELOW

Holmes was charged with possession with intent to distribute a Schedule II controlled substance, cocaine, and possession of a Schedule II controlled substance, cocaine. *See* § 18–18–405(1)(a), –405(2)(a)(I), 6 C.R.S. (1998). Holmes filed a motion to suppress evidence found during a search of his person incident to his arrest following a warrantless entry into his apartment.

The trial court held an evidentiary hearing on the motion to suppress. Denver Police Officer Daniel O'Bannon testified that on November 16, 1998, at about 9:25 p.m., he responded to a complaint of excessive noise at an address on Humboldt Street in Denver. The complainant directed Officer O'Bannon to 1442 Humboldt Street, a house that had been converted into several apartment units. Officer O'Bannon heard loud noises emanating from the apartment, so he knocked on the door "real hard" in order to get the attention of someone inside. As a result of Officer O'Bannon's knocking, the door swung open, permitting him to see a marihuana bong inside the apartment and to smell a strong odor of marihuana coming from the apartment.

Officer O'Bannon stepped inside, learned that it was Holmes's apartment, and placed Holmes under arrest for possession of drug paraphernalia. A search incident to arrest revealed cocaine in the pocket of Holmes's pants. It is this cocaine that is the subject of the suppression motion.

Holmes presented two witnesses at the suppression hearing. A man who assisted Holmes's landlord with maintenance work testified that the door latch on Holmes's apartment door was working properly and that the door would not have swung open merely from someone "banging" on it. A neighbor who used the door to Holmes's apartment on a daily basis testified that to the best of his knowledge, the door was in proper working order at the time of the incident.

The prosecution's rebuttal witness, Officer Trent Tatum, testified that after Holmes's arrest, as the police were departing from Holmes's apartment, he attempted to close the apartment door behind them. At that time, he discovered that the door latch mechanism did not function properly and would not latch. He further testified that the only way to lock the door would have been with a deadbolt lock.

The trial court resolved this contested issue of fact in favor of the prosecution and found that Officer O'Bannon had inadvertently caused the door to open by knocking hard on the door when the door was not latched:

> The Court finds on conflicting evidence that I have no quarrel with [Officer O'Bannon's] account of the facts and it's supported by further testimony of Officer Tatum to the effect that the door latch on the door in question was not operating properly.

1. A bong is a water pipe used for smoking marihuana. *See Webster's New World Dictionary* 159

(3d ed.1994).

In any event, it's the Court's finding that the opening of the door by the officer was, nonetheless,—I mean, was inadvertent, non-intentional, not intentional, I should say, and simply was occasioned by the noise level, the pounding on the door and the fact that the door was not latched.

Although the trial court found that Officer O'Bannon had not intended to open the apartment door by knocking on it, the court ruled that the intent of the officer was irrelevant to the actual invasion of Holmes's privacy that occurred:

> ... [T]he officer, I think in good faith and without any intention to do anything improper, knocks on the door. The door swings open. Lo and behold, there's the defendant and the bong.
>
> Once again, as I pointed out, certainly from the citizen's standpoint it doesn't make too much difference whether the opening of the door is intentional or inadvertent. I mean, if his home is his castle, it's been breached, either intentionally or unintentionally, by the opening of the door.
>
> And in my view no matter how much the police might be operating in good faith—I have no question whatsoever but that the officer was here—I think he has inadvertently tripped over the Constitution and the motion to suppress is granted.

The prosecution then brought this interlocutory appeal under section 16–12–102(2), 6 C.R.S. (1998), and C.A.R. 4.1.

## II. ANALYSIS

In suppressing the evidence obtained during the search of Holmes's person incident to his arrest, the trial court correctly stated the legal framework as follows:

> We start with the basic proposition that a warrantless entry and arrest of the suspect in his home is illegal unless the prosecution establishes the existence of probable cause, probable cause and exigent circumstances.

However, the trial court did not make findings concerning whether the police officer's warrantless entry into the apartment was justified by the existence of probable cause and exigent circumstances.[2] *See People v. Mendoza–Balderama,* 981 P.2d 150, 165–166 (Colo.1999); *People v. O'Hearn,* 931 P.2d 1168, 1175 (Colo.1997). Rather, the court found that the officer's inadvertent opening of the door was an unconstitutional warrantless search, and therefore the court presumably determined that the evidence seized from Holmes's person must be suppressed as a fruit of the initial constitutional violation.

The People argue in this appeal that the trial court erred in its analysis because Officer O'Bannon's inadvertent opening of the door and observation of the bong did not constitute a "search" for purposes of the Fourth Amendment.[3] We agree.

The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions." *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

■ We reaffirm the fundamental principle that an individual's residence—whether house, apartment, motel room, or tent[4]—is entitled to the highest protection from gov-

---

2. Although in the course of hearing argument from counsel, the court did allude to these issues in the context of some hypotheticals, we do not view these comments as definitive rulings by the trial court.

3. Holmes based his motion to suppress on the Fourth Amendment to the United States Constitution and article II, section 7 of the Colorado Constitution. The court's suppression order does not specify whether it was made pursuant to the federal or state constitution. "In the absence of a statement indicating that the decision rests on state grounds, we will presume that the court relied on federal law." *People v. Houseman,* 900 P.2d 74, 77 n. 4 (Colo.1995); *see also Michigan v. Long,* 463 U.S. 1032, 1041, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983).

4. *See People v. Schafer,* 946 P.2d 938, 941 (Colo. 1997).

ernmental intrusion. *See Payton v. New York*, 445 U.S. 573, 589, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980); *Silverman v. United States*, 365 U.S. 505, 511, 81 S.Ct. 679, 5 L.Ed.2d 734 (1961). "At the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." *Id.*

However, the threshold question presented by the somewhat unusual circumstances of this case is whether the actions of the police implicated the protections of the Fourth Amendment in the first place. In other words, we must decide whether Officer O'Brannon engaged in a search when he knocked hard on Holmes's apartment door and inadvertently caused it to open because it was not properly latched, revealing the bong inside the apartment.

 "A 'search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed." *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984). Whether an individual's expectation of privacy is reasonable depends on two factors. "[F]irst, has the individual manifested a subjective expectation of privacy in the object of the challenged search? Second, is society willing to recognize that expectation as reasonable?" *California v. Ciraolo*, 476 U.S. 207, 211, 106 S.Ct. 1809, 90 L.Ed.2d 210 (1986).

The trial court found that Officer O'Bannon was responding to a complaint of loud noise and that when Officer O'Bannon approached Holmes's apartment, he heard loud noise coming from that apartment and the apartment next door. The trial court also found that Officer O'Bannon did not intend to open the door by knocking hard on it and that the reason the door opened was because it was not properly latched. We defer to these findings of fact by the trial court, as they are not clearly erroneous. *See People v. Mejia–Mendoza*, 965 P.2d 777, 780 (Colo. 1998).

 "Knocking on the door of a residence for the purpose of investigating a crime is reasonable police conduct and does not infringe upon the occupant's right of privacy." *People v. Baker*, 813 P.2d 331, 333 (Colo.1991). Because he was investigating a complaint of a disturbance, it is irrefutable that Officer O'Bannon was authorized to knock on Holmes's door. The question, then, is whether the fact that the door was not properly latched transforms Officer O'Bannon's reasonable and lawful conduct into an unconstitutional warrantless search. We hold that it does not.

Given the trial court findings that loud noise was coming from Holmes's apartment at about 9:30 in the evening, it could have just as likely been a member of the public who knocked hard on Holmes's door, causing it to open. Even if Holmes had a subjective expectation that no one would knock hard enough on his unlatched door to cause it to open, under these circumstances, such an expectation would not be one "that society is prepared to recognize as reasonable." *People v. Shorty*, 731 P.2d 679, (Colo.1987) (holding that police officer who discovered drugs under a doormat outside the entrance to defendant's apartment had not conducted a search).

Because Officer O'Bannon's action in knocking and causing the door to open did not constitute a search, this conduct did not violate the Fourth Amendment. Hence, we reverse the trial court's suppression ruling.

 As we have noted, the trial court did not rule on the question of whether Officer O'Bannon's decision to enter the apartment and arrest Holmes without first obtaining a warrant was justified by probable cause and exigent circumstances. *See Mendoza–Balderama*, 981 P.2d at 165–166; *O'Hearn*, 931 P.2d at 1175. Thus, we do not address these issues, and we remand this case to the trial court for further findings.

## III. CONCLUSION

We conclude that Officer O'Bannon's action in knocking on Holmes's apartment door, which caused it to open, did not constitute a search for purposes of the Fourth Amendment. Accordingly, we reverse the trial court's suppression order and remand

this case to that court for proceedings consistent with this opinion.