JUSTICE GABRIEL, dissenting.
¶36 The majority concludes that exigent circumstances justified the warrantless search of defendant-appellee Michael Pappan's home. Because I believe that the district court correctly found that the evidence presented at the suppression hearing did not support such a conclusion, I respectfully dissent.
I. Factual Background
¶37 I need not repeat the majority's recitation of the salient facts. I do, however, highlight the following facts, virtually all of which were undisputed, because these facts inform my analysis of this case.
¶38 The matter at issue unfolded when a 911 caller alleged that his across-the-street neighbor was pointing a rifle with a laser scope at the caller's house. At no time did the caller or anyone else report that any shots were fired.
¶39 A number of officers responded, and Officer De La Fuente saw a woman who turned out to be Pappan's wife go into the house and lock the door. Officer De La Fuente ordered the woman to come outside, and she did so. The officer then ordered all other parties in the house to come out, and when she did, she saw Pappan, who fit the description of the suspect whom the officers were seeking, come down the stairs and leave the house.
¶40 At this point, the record reveals that Officer De La Fuente understood that a child remained in the house. The child soon came out, however, and Officer De La Fuente thus had every reason to believe-and on the facts presented, any objectively reasonable officer in her position would have believed-that everyone who had been in the house was now out of the house. Indeed, the officer confirmed *282 this by asking the people who had come out whether anyone remained inside. All responded that no one was still in the house.
¶41 Notwithstanding the foregoing, and based solely on the fact that Officer De La Fuente does not believe what people tell her, she and several officers entered the house, which was by then completely secured by other officers, presumably to conduct a protective sweep.
¶42 Although Officer De La Fuente ultimately testified-and the People now contend-that such a sweep was necessary to ensure that no one else was in the house, no evidence suggested that anyone else was inside, and the officers did not search the entire house, as they would have done in a typical protective sweep. Instead, they searched only the first and second floors (but not the basement), and they stopped their search as soon as they confiscated several weapons from the second floor, thus suggesting that the search here was not actually a protective sweep, but rather was a search for evidence.
II. Analysis
¶43 I begin by setting forth the applicable law and then apply that law to the facts of this case.
A. The Fourth Amendment and the Exigent Circumstances Exception
¶44 The Fourth Amendment provides, in pertinent part, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. Likewise, the Colorado Constitution provides, in pertinent part, "The people shall be secure in their persons, papers, homes and effects, from unreasonable searches and seizures." Colo. Const. art. II, § 7.
¶45 It has long been settled that the physical entry into a person's home is the "chief evil against which the Fourth Amendment is directed." People v. O'Hearn, 931 P.2d 1168, 1173 (Colo. 1997) (internal quotations omitted); see also Payton v. New York, 445 U.S. 573, 590, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980) ("[T]he Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant."). Accordingly, "[i]t is a 'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable." Payton, 445 U.S. at 586, 100 S.Ct. 1371 (quoting Coolidge v. New Hampshire, 403 U.S. 443, 477, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) ); accord O'Hearn, 931 P.2d at 1173.
¶46 Notwithstanding the foregoing, courts have recognized several exceptions to the warrant requirement, and the People bear the burden of establishing one of these exceptions. People v. Amato, 193 Colo. 57, 562 P.2d 422, 423 (1977).
¶47 As pertinent here, one such exception is the so-called "exigent circumstances" exception. People v. Brunsting, 2013 CO 55, ¶ 25, 307 P.3d 1073, 1079. This exception is limited to situations in which, due to an emergency, a compelling need for immediate police action militates against strict adherence to the warrant requirement. People v. Gomez, 632 P.2d 586, 592 (Colo. 1981). The exception is thus a narrow one, and it applies only when the People establish both probable cause to search and exigent circumstances justifying a warrantless entry. People v. Jansen, 713 P.2d 907, 911 (Colo. 1986).
¶48 Exigent circumstances have been limited to only a few factual circumstances. The People assert that this case involves one such circumstance, namely, the scenario in which a colorable claim of emergency threatens the life or safety of another. Brunsting, ¶ 26, 307 P.3d at 1079. To establish such a scenario here, the People were required to show both an immediate crisis inside the house and the probability that police assistance would have helped alleviate that crisis. Id. at ¶ 29, 307 P.3d at 1080. These requirements are consistent with the fact that the primary purpose of such a warrantless entry is to render emergency assistance and not merely to search for evidence. People v. Allison, 86 P.3d 421, 426 (Colo. 2004).
*283 B. Application
¶49 Applying the foregoing principles to the evidence presented in this case leads me to conclude that the district court correctly found that the People did not satisfy their burden of establishing the applicability of the exigent circumstances exception here.
¶50 Although the People's briefs in this case principally contest facts that the district court found against the People, I see no evidence supporting the People's contention that the officers on the scene had an objectively reasonable basis to believe that they had an immediate need to enter the home to protect their lives and safety or the lives and safety of others.
¶51 As noted above, the record demonstrates that all of the people whom the officers believed to have been in the house had exited, and they all told Officer De La Fuente that no one remained in the house. The record reveals no evidence to the contrary and specifically no evidence of a second person allegedly menacing the across-the-street neighbor (or even of a report of such a second person) and no evidence of an ongoing threat. To the contrary, the record indicates that the neighbor reported that one man was pointing a gun at the neighbor's house, and Officer De La Fuente testified at the suppression hearing that Pappan, who had exited the house, fit the description of that man, whether she knew his precise identity or not. In addition, the record contains no evidence that any shots were fired or that anyone was about to fire any shots.
¶52 Thus, the only evidence justifying the officers' warrantless entry into Pappan's home was Officer De La Fuente's statement that she does not believe what people tell her. In my view, however, a presumption that everyone lies, absent any factual basis to support a conclusion that anyone was lying, cannot suffice to justify a warrantless entry into a suspect's home. If it could, then the exigent circumstances exception would have no limit. Police officers would always be permitted to enter a suspect's home simply by stating a subjective, albeit factually unsupported, view that they did not believe that the house was empty, even if they were told precisely the opposite and even if they had no factual basis to disbelieve what they were told.
¶53 Nor do I believe that a warrantless search can be supported by an officer's subjective assumption that a second suspect might possibly be in a home, absent any factual basis to support such an assumption. Again, if such an assumption were sufficient, then the exigent circumstances exception would be rendered meaningless. Exigent circumstances would exist in virtually every case because police officers could almost always truthfully say that a second suspect was a possibility.
¶54 Last, I find it telling that the People have offered no response to Pappan's argument that the officers' purported protective sweep here was invalid and a pretext for an exploratory search for evidence, given that the police did not search the entire house and stopped their purported sweep as soon as they confiscated the guns from the second floor. Obviously, were the police truly engaged in a protective sweep for other people in the house, they would have searched the entire house, and they would not have stopped their search once they confiscated several guns from the second floor. Based on the People's own reasoning, another gunman could have been hiding in the basement.
¶55 On this point, I am not persuaded by the majority's statements that (1) once the guns were seized, the officers "may reasonably have concluded" that they did not need to search the basement and (2) "it is equally plausible" that the officers perceived no threat that anyone may have been in the basement. Maj. op. ¶ 21. No evidence supports either of these assertions as to what the officers may have perceived (Officer De La Fuente, the People's only witness at the suppression hearing, did not so testify). Nor do I believe that this court should speculate as to such facts, particularly given that the People had the burden of proving the applicability of the exigent circumstances exception in this case.
¶56 Nor am I persuaded by the majority's reliance on People v. Aarness, 150 P.3d 1271, 1274 (Colo. 2006), and People v. Smith, 13 P.3d 300, 303-04 (Colo. 2000). See maj. op.
*284 ¶¶ 25-29. As the majority's recitation of the facts of those cases makes clear, there, the evidence established a clear and non-speculative threat to the officers at issue. See id. at ¶¶ 25, 27 (noting that in Aarness, the officers saw the defendant shove his hand between the cushion and armrest of a recliner in which he was sitting, causing the officers to fear that he was reaching for a weapon, and that in Smith, an officer who had initiated a traffic stop shortly before 3:00 a.m. saw the driver make a cell phone call, after which a Suburban with tinted windows pulled up behind the officer's patrol car, leading the officer to fear an ambush). The evidence in this case, in contrast, revealed no such ongoing threat. Rather, the People seek to justify the search and seizure at issue based on possibilities, speculation, and assumptions, without any supporting evidence. For the reasons set forth above, I do not believe that this kind of conjecture suffices to satisfy the People's burden of proof.
¶57 In sum, like the district court, I do not believe that the People have established the exigent circumstances necessary to justify the warrantless home entry at issue. As a result, in my view, the seizure of the guns at issue cannot be justified under the plain view doctrine. See People v. Gothard, 185 P.3d 180, 183 (Colo. 2008) (noting that to satisfy the plain view doctrine, the People must show, among other things, that the initial intrusion was legitimate). I therefore would affirm the district court's order suppressing the fruits of the unconstitutional search and seizure at issue.
III. Conclusion
¶58 Today, the majority adopts a standard for exigent circumstances that in my view (and notwithstanding the majority's assurance to the contrary, see maj. op. ¶ 20, n.5) would allow a warrantless entry into a suspect's home based on nothing more than a police officer's presumption, unsupported by any evidence, that people always lie. Because I believe that such a standard diminishes the protections afforded by the United States and Colorado Constitutions, and because I perceive no other evidence supporting a finding of exigent circumstances in this case, I would defer to the district court's findings and conclude that the warrantless search and seizure at issue were unconstitutional, thus requiring suppression of the fruits of that search and seizure.
¶59 Accordingly, I respectfully dissent.
I am authorized to state that JUSTICE HART joins in this dissent.