The PEOPLE of the State of Colorado, Plaintiff–Appellant

v.

Ramiro CASTRO, Defendant–Appellee.

No. 07SA41.

Supreme Court of Colorado,
En Banc.

May 14, 2007.

Bill Thiebaut, District Attorney, Tenth Judicial District, Anthony Marzavas, Deputy District Attorney, Pueblo Regional Public Defenders, Pueblo, Colorado Attorneys for Plaintiff–Appellant.

Douglas K. Wilson, Colorado State Public Defender, Suzanne C. Reynolds, Deputy Public Defender, Pueblo, Colorado, Attorneys for Defendant–Appellee.

Justice BENDER delivered the Opinion of the Court.

### Introduction

The People bring this interlocutory appeal pursuant to Colorado Appellate Rule 4.1 and section 16–12–102(2), C.R.S. (2006), seeking to reverse the trial court's ruling suppressing statements and physical evidence seized during a traffic stop. The trial court based its ruling on its conclusion that the People did not meet their burden to establish that the Defendant Ramiro Castro voluntarily consented to the search of the vehicle he was

driving. The trial court reasoned that because the occupants of the car spoke Spanish, the only officer that could testify regarding his consent to search was the bi-lingual officer, Officer Diante, who was unavailable for the motions hearing. Thus, the court held that the People did not satisfy their burden with regard to the validity of Castro's consent.

Our review of the record establishes that the facts do not support the trial court's conclusion that the People failed to present sufficient evidence to establish that Castro, the driver of the car, spoke English well enough to answer the officers' questions and to voluntarily consent to the search of the car in which he drove. The officers testified that Castro, unlike the other two passengers in the car, spoke English well enough to respond to their questions when the car was initially stopped. The record reflects sufficient evidence to conclude that Castro voluntarily consented to the search.

Based upon our review of the record, we conclude that the trial court's ruling is not supported by the record and thus is clearly erroneous. Hence, we reverse the trial court's order granting the motion to suppress and remand this case to the trial court for further proceedings consistent with this opinion.

## I. Facts and Procedural History

Defendant Ramiro Castro was arrested and charged with possession with intent to distribute a controlled substance—schedule II (cocaine) and possession of a controlled substance—schedule II—1000 grams or more (cocaine)[1] after police officers searched and found cocaine in a car he was driving during a traffic stop for speeding. The officer who initiated the stop, Officer Dodge, testified that Castro consented to the search of the car that revealed controlled substances. Prior to trial, Castro filed a motion to suppress evidence seized from this search, arguing his consent was not voluntarily obtained.

At the suppression hearing, the People presented evidence regarding the traffic stop involving Castro and the two other passengers who were also co-defendants. The hearing concerning pre-trial motions involved all three co-defendants.

Both Officer Dodge and Detective D'Amour, a detective who assisted Officer Dodge, testified, but because neither officer spoke Spanish, the testimony related only to the conversations each had with Castro. A third officer, Officer Diante, was also present during the search. She communicated with the two passenger co-defendants in Castro's car who did not speak English. Officer Diante was unavailable for this hearing.

As the officer initiating the stop, Officer Dodge provided details surrounding the traffic stop and his interaction with Castro. He testified that Castro was the only person he could communicate with because he was the only person who spoke English. When asked on cross-examination whether Castro was able to communicate with him appropriately, he responded that he was:

> Defense: And Mr. Castro was able to communicate with you appropriately?
>
> Officer: Yes, ma'am.

The record also establishes that both Officer Dodge and Detective D'Amour asked Castro several questions to which Castro responded appropriately. When Officer Dodge first contacted him and asked him for his license, Castro handed him an ID. Officer Dodge testified that, "He had told me that he had a permit, but ... the license he actually handed me was just an ID." When Officer Dodge asked if anybody else in the vehicle had a license, he testified that, "Mr. Castro said that they were from Mexico, and then he turned and said something to them."

Officer Dodge asked Castro several additional questions such as whose car was he driving, where was he coming from, and where was he going, and Castro responded indicating his understanding of the question and his ability to formulate a response in English:

---

1. Though not pertinent to the issues we now address, Castro was also charged with special

offender, speeding, and no operator's license.

I had asked him who had owned the vehicle. He said that the owner of the vehicle wasn't actually a friend of his like he had said before, but it was actually a friend of the other two passengers in the vehicle.... I asked him where they were coming from, he said that they were coming from California. I'd asked them what their destination was, he said they were going to ... Pueblo to buy a vehicle.

When Castro informed Detective Dodge that he and his friends were actually going to Denver to buy a vehicle at an auction, Officer Dodge asked follow-up questions which also indicated Castro's ability to understand the officer:

And I asked him, "Why would you come to Pueblo to buy a vehicle at auction basically, you know, just one vehicle?" And he said, "Well, actually we're going to Denver to buy that vehicle." I asked him if there was any specific vehicle; he said it wasn't a specific vehicle; he said they were going up there to get a vehicle at the auction.

When Officer Dodge asked Castro why he was driving on the street on which he pulled him over, Castro explained that they were staying at a local motel and were going to Wal–Mart:

I had actually asked him ... "Why they were on Pueblo Boulevard?" He said that they were staying at a local motel, the Hampton Inn over on Gateway, and that they were going to Wal–Mart to buy some items.

Detective D'Amour also testified that he asked Castro where he was staying, if there were any drugs in the room, and if the officers could search the room. Castro answered each of these questions:

I asked him where he was staying in town, and he told me he was staying at the hotel .... the Hampton.... He had pointed back behind me ... I asked him, "What room?" He told me, "Room 302." I asked

him if we could search the room. He said we could. I asked him if there was any drugs in the room. He said, "No." I asked him if there were any drugs in the car. He said, "No."

Finally, Officer D'Amour also testified that when he read Castro his rights Castro responded that he did not want to continue talking until a lawyer was present.

As to the issue of consent, Officer Dodge testified that Castro offered to let Officer Dodge search the car. When the officer asked Castro whether he had any money, guns, weapons, or contraband in his car, Castro answered that he did not. He then told Officer Dodge that the officers could search the car.

Officer: I'd asked Mr. Castro if they had had any money, guns, weapons, any contraband of any type inside of the vehicle. At which point, he said they did not and that I could search.

Prosecutor: Did you ask to search, or did he say you could search?

Officer: He said I could search.

Castro's attorney elicited substantially similar testimony on cross-examination.[2] The court did not make any rulings at the conclusion of Officer Dodge's and Detective D'Amour's testimonies, but instead reset the hearing for a later date so that Officer Diante could testify.

Castro's attorney told the court that she did not need to be present at the subsequent proceeding involving Officer Diante's testimony because the officer's testimony did not concern Castro. She stated, "And Officer Diante does not concern Mr. Castro, so I don't need to be here for that part anyway." Apparently Officer Diante was the only officer that could testify as to police conversations with the two other passenger co-defendants who did not speak English.

At the second hearing, when Officer Diante did not appear to testify the court con-

---

**2.** Castro's lawyer cross-examined Officer Dodge as to Castro's consent:

Castro: Okay. Now, did you ask Mr. Castro if you could search the car?

Officer: I'd asked him if he had had any guns, money, drugs, anything like contraband in the vehicle. He said he didn't use drugs,

and he had told me—if I may refer to my report, I remember quoting him in the report.

Castro: Okay.

Officer: I had asked him if there had been anything in the véhicle, and he told me quote, "No, you can search it."

cluded that the People had not met their burden to establish that Castro voluntarily consented to the search. Despite evidence to the contrary, the court ruled that Castro spoke Spanish and that it could not determine whether he spoke English well enough to consent to the search. For this reason, the court found that the only person that could testify as to this issue was Officer Diante. In the absence of Officer Diante's testimony, the court granted Castro's motion to suppress, excluding all statements made by Castro and all of the evidence that was seized based upon that consent.[3]

The trial court reaffirmed its order of suppression, although the People argued that Castro spoke English and that only the passenger co-defendants could not speak English. We address this ruling in light of the facts presented.

## II.

■ A warrantless search may be justified and is constitutionally permissible when a citizen consents to the search. *People v. Drake*, 785 P.2d 1257, 1265 (Colo.1990). The admissibility of evidence obtained as a result of an allegedly consensual search must stand or fall on the basis of the consent given before the search. *People v. Mendoza–Balderama*, 981 P.2d 150, 156 (Colo.1999) (citing 3 Wayne R. LaFave, *Search and Seizure* § 8.1 (3d ed.1996)).

■ The People have the burden of proving that the necessary consent was obtained before a search was initiated. *United States v. Mendenhall*, 446 U.S. 544, 557, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980); *People v. Santistevan*, 715 P.2d 792, 795 (Colo.1986). To be valid, consent must be given freely and voluntarily. *Mendoza–Balderama*, 981 P.2d at 156.

■ Voluntariness involves questions of fact to be decided by the trial court. Courts look to the totality of the circumstances surrounding the individual's consent to determine whether the consent is voluntary. *Mendenhall*, 446 U.S. at 557, 100 S.Ct. 1870; *People v. Licea*, 918 P.2d 1109, 1112 (Colo. 1996). While reviewing courts typically defer to the trial court's findings of fact, we must overturn the trial court's ruling when it is clearly erroneous or not supported by the record. *See Mendoza–Balderama*, 981 P.2d at 158. This is the case here.

■ While a language barrier may be relevant to evaluate a suspect's ability to act voluntarily, it is not determinative in this case. *See United States v. Hernandez*, 893 F.Supp. 952, 961 (D.Kan.1995) (citations omitted). The record does not support the trial court's conclusion that the People failed to present sufficient evidence to establish that Castro spoke English well enough to voluntarily consent to a search of the vehicle in which he drove. Officer Dodge and Detective D'Amour testified that Castro spoke English well enough to respond appropriately to the officers' questions and the record detailing his responses reflects the same. Even Castro's lawyer stated that she did not need to be present at the proceedings involving the Spanish speaking officer's testimony because the hearing did not concern Castro.

Officer Dodge testified that Castro gave permission for the police to search the vehicle. The record contains no evidence to indicate that Castro's consent was not voluntarily obtained. *See Licea*, 918 P.2d at 1113 (holding that a defendant's consent is not rendered involuntary by the fact that he was in custody and was not advised of his constitutional rights before the officers requested his consent to search or by the fact that he was eighteen years old, "chemically messed up," and tired); *Drake*, 785 P.2d at 1265–66 (holding that a defendant freely and voluntarily consented when there was no evidence that

---

**3.** The Court ruled that:

The Court finds that the only person who could testify as to the issue—as to consent, Officer Diante, has not responded to her subpoena. Therefore, the prosecution has not met their burden that the consent in this matter was voluntarily given; the Court finds that it is not established, even by a preponderance of the

evidence, based upon the testimony that's been presented. Therefore, without valid consent, there was no reason to enter the vehicle and take Mr. Castro out of the vehicle.... Mr. Castro's Motion to Suppress is granted in its entirety; all statements made by Mr. Castro, all of the evidence that was seized based upon the consent.

the officers made threats or promises that would affect the defendant's judgment); *People v. Reyes,* 174 Colo. 377, 483 P.2d 1342, 1343–44 (1971) (holding that consent was freely and voluntarily given despite officer's advisement that the police could get a search warrant if consent was not given).

The trial court may have been confused regarding Castro's ability to speak English as contrasted with the other defendants due to the delay in the proceedings. Perhaps it mistakenly believed that the continuance to hear Officer Diante's testimony was necessary for Castro's case as well. However, because the record indicates that the People presented evidence that Castro spoke English sufficiently to validly consent to the search of the car in which he drove and the only evidence presented was that this consent was voluntarily given, we conclude that the trial court's order granting the motion to suppress is not supported by the record and therefore is clearly erroneous. In this case, we do not defer to the court's finding of fact, but instead reverse the suppression order and remand the case for further proceedings consistent with this opinion.

## III. Conclusion

Based upon our review of the record, we conclude that the trial court's ruling is not supported by the record and thus is clearly erroneous. Hence, we reverse the trial court's order granting the motion to suppress and remand this case to the trial court for further proceedings consistent with this opinion.